**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.**

IN RE APPLICATION OF
Victor Mikhaylovich Pinchuk
Pursuant to 28 U.S.C. § 1782
For Judicial Assistance in
Obtaining Evidence in this District
_____/

**_EX PARTE_ APPLICATION FOR DISCOVERY PURSUANT**
**TO 28 U.S.C. § 1782 AND INCORPORATED MEMORANDUM OF LAW**

Applicant, Victor Mikhaylovich Pinchuk ("Pinchuk" or the "Applicant"), respectfully submits this *Ex Parte* Application for Discovery Pursuant to 28 U.S.C. § 1782 (the "Application") seeking discovery from: (i) Georgian American Alloys, Inc.; (ii) Felman Production LLC (wholly-owned subsidiary of Georgian American Alloys, Inc.); (iii) Felman Trading, Inc. (wholly-owned subsidiary of Georgian American Alloys, Inc.); (iv) CC Metals & Alloys LLC (wholly-owned subsidiary of Georgian American Alloys, Inc.); and (v) Mordechai Korf (the Chief Executive Officer of Georgian American Alloys, Inc. and Felman Trading, Inc.) (collectively, (i) through (iv) are referred to as the "Corporate Discovery Subjects" and (i) through (v) are referred to as the "Discovery Subjects").

All of the Discovery Subjects can be found in this District. Applicant requests the discovery for use in a pending arbitration in the London Court of International Arbitration (the "London Arbitration") that Applicant has instituted against his business partners, Igor Valeryevich Kolomoisky ("Kolomoisky") and Gennadiy Borisovich Bogolyubov ("Bogolyubov"). In the London Arbitration, Applicant seeks damages as a result of Kolomoisky's and Bogolyubov's misappropriation of business opportunities, self-dealing

transactions, and failure to distribute profits to Applicant in violation of the parties' agreements and understandings.

As set forth below, the discovery that Applicant seeks meets the requirements of 28 U.S.C. § 1782, as well as the factors set forth by the United States Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.,* 542 U.S. 241, 246-47 (2004). The Discovery Subjects have information that is highly relevant to the claims asserted in the London Arbitration.

## FACTUAL BACKGROUND

### I.   THE RELEVANT PARTIES

Pinchuk is a Ukrainian citizen who resides in Ukraine. *See* Exhibit A, Declaration of Henry Forbes Smith ("H. F. Smith Decl.") at ¶ 5. Kolomoisky is a dual citizen of Ukraine and Israel, and currently resides in Switzerland. *See id.* at ¶ 6(1). Bogolyubov is a Ukrainian citizen who resides in England. *See id.* at ¶ 6(2). Kolomoisky and Bogolyubov have been business partners since the late 1980s, together owning a number of different types of businesses, including extensive interests in the ferroalloy[1] business. *See id.* at ¶ 9. Pinchuk also owns extensive interests in the ferroalloy business. *See id.*

In late 2005 or early 2006, Kolomoisky and Bogolyubov approached Pinchuk about merging their respective ferroalloy assets. *See* H. F. Smith Decl. at Ex. 2, ¶ 33. At the time, Pinchuk owned a majority interest in one of the largest producers of ferroalloys in Europe (the "Nikopol Plant"). *See id.* at ¶¶ 31-32. Kolomoisky and Bogolyubov owned a minority interest in the Nikopol Plant, controlling interests in two of the largest suppliers of raw materials to the Nikopol Plant, and substantial interests in two other ferroalloy production plants. *See id* at ¶¶

---

[1] Ferroalloys are alloys of iron with a high proportion of other elements that are used to make steel.

30-32. In April 2006, the parties agreed in principal to create a joint holding structure in respect of their ferroalloy assets. *See id.* at ¶ 35. For purposes of this Application, this joint holding structure (which comprises a number of companies holding interests in ferroalloy assets) is hereinafter referred to as "Ferroalloy Holding." Ferroalloy Holding is not a single corporate entity, and the term is used in this Application for convenience.

The parties also entered into a series of interconnected written and oral agreements between April and December 2006. *See id.* at ¶¶ 38-59. In and around November 2006, after lengthy negotiations, Pinchuk, Kolomoisky, Bogolyubov, and others agreed to the terms for the creation of Ferroalloy Holding.

Specifically, the parties agreed:

- that Pinchuk, Kolomoisky, and Bogolyubov would pool certain of their current respective interests and provide an opportunity to the other parties to participate in all future acquisition opportunities in the ferroalloy business in Ukraine and elsewhere. *See id.* at ¶¶ 51-52.

- to share in the profits of the ferroalloy business (which included any future acquisition opportunities which were taken up by the other parties) in proportion to their respective interests in Ferroalloy Holding, and that such profits (less such allowance for the working capital and capital expenditure requirements of the Ferroalloy Holding as might be agreed between the parties from time to time) would be distributed among the parties on at least an annual basis in proportion to their respective interests in the Ferroalloy Holding. *See id.* at ¶ 54. According to the parties' agreements, Kolomoisky and Bogolyubov together currently hold a 50% interest in Ferroalloy Holding, and Pinchuk currently holds a 25% interest.[2]

- that Kolomoisky and Bogolyubov or their agents would conduct the day-to-day management of the assets of Ferroalloy Holding. *See id.* at ¶ 41.

---

[2] The remaining 25% interest in Ferroalloy Holding is currently held by three other partners from whom no relief is sought in the London Arbitration. All references in this Application to the ownership interests in Ferroalloy Holding are as of the end of 2010 through the present date. (The parties' respective ownership interests in Ferroalloy Holding have varied between 2006 and 2010.)

- that Pinchuk would be entitled to any accounting or other information related to business and trading activities which was reasonably necessary to calculate and/or audit the profits of Ferroalloy Holding.  *See id.* at ¶ 54(3)(b).

- that none of the parties would destroy or diminish the value of the assets of Ferroalloy Holding or the parties' participation therein.  *See id.* at ¶ 53(1).

- that none of the parties would misappropriate the assets or profits of Ferroalloy Holding.  *See id.* at ¶¶ 53(2), 55.

## II. BASIS FOR DISPUTE BETWEEN PINCHUK AND KOLOMOISKY AND BOGOLYUBOV

Kolomoisky and Bogolyubov have violated the various agreements and understandings relating to Ferroalloy Holding, causing Pinchuk significant monetary damages that he seeks to recover in the London Arbitration.  *See* H. F. Smith Decl. at ¶¶ 15-16.  Specifically, Pinchuk claims that Kolomoisky and Bogolyubov have:

- acquired further ferroalloy assets without offering Pinchuk the opportunity to participate in those assets in proportion to Pinchuk's interest in Ferroalloy Holding or otherwise as required under the parties' agreements.  *See* H. F. Smith Decl. at Ex. 2, ¶¶ 60, 62-71;

- failed to distribute on at least an annual basis to Pinchuk his share of Ferroalloy Holding's profits (*i.e.,* the profits of the Ferroalloy Holding less such allowance for the working capital and capital expenditure requirements of Ferroalloy Holding as might be agreed between the parties from time to time).  *See id.* at ¶¶ 61, 72-73;

- misappropriated and artificially depressed the profits of Ferroalloy Holding through self-dealing transactions, for example by causing Ferroalloy Holding entities to (directly or indirectly) buy raw materials at above-market prices from or sell products at below-market prices to entities owned or controlled by Kolomoisky and/or Bogolyubov, including the Corporate Discovery Respondents.  *See id.* at ¶¶ 61, 74-77; and

- diverted profits from Ferroalloy Holding to companies owned and/or controlled by Kolomoisky and/or Bogolyubov.  *See id.* at ¶¶ 61, 74.

4

## III. THE DISCOVERY SUBJECTS

The Discovery Subjects can be found in this District. None of the Discovery Subjects is a named party in the London Arbitration. *See* H. F. Smith Decl. at ¶ 18.

### A. The Corporate Discovery Subjects

The Corporate Discovery Subjects consist of the following entities:

- **Georgian American Alloys, Inc. ("GAA")** is headquartered in Miami, Florida, and is a global leader in the ferroalloy industry. GAA owns and operates numerous domestic and international ferroalloy businesses. Companies under the GAA umbrella include, among others, Felman Production LLC ("Felman Production"), Felman Trading, Inc. ("Felman Trading"), and CC Metals & Alloys, LLC ("CCMA").[3]

- **Felman Production**, founded in 2006, is a wholly owned subsidiary of Miami-based GAA and is registered to do business in Florida. It is a leading producer of high-quality ferrosilicomanganese, an essential component used in the manufacturing of steel. Felman Production's products are traded and distributed solely through its Miami-based sister company, Felman Trading.

- **Felman Trading**, founded in 2008 and headquartered in Miami, Florida, is a wholly owned subsidiary of GAA. It is a global supplier of ferroalloys. It is also the sole trader and distributor of ferroalloys produced by its sister companies, Felman Production and CCMA.

- **CCMA**, a Delaware corporation headquartered in Kentucky, became a wholly owned subsidiary of GAA in 2012 after GAA acquired the membership interests of CCMA from an affiliate. CCMA is a major producer and supplier of specialty ferroalloys to the global iron and steel industry. Its products are traded and distributed solely through its Miami-based sister company, Felman Trading.

After investigation, Applicant believes that the Corporate Discovery Subjects are owned and/or controlled by Kolomoisky and/or Bogolyubov through formal and informal corporate

---

[3] GAA also owns Georgian Manganese LLC, a holding company of ferroalloy assets in the Republic of Georgia. Kolomoisky and Bogolyubov, or their interests, acquired substantial interests in the ferroalloy assets currently held by Georgian Manganese LLC in or around January 2007. *See* H. F. Smith Decl. at Ex. 2, ¶ 62.

structures designed to operate Kolomoisky's and/or Bogolyubov's interests in the ferroalloy business.  Pinchuk should have been offered an opportunity to participate in the Corporate Discovery Subjects or their assets, through his interest in Ferroalloy Holding.  Moreover, the Corporate Discovery Subjects are among the ferroalloy companies to which Kolomoisky and Bogolyubov are alleged to have illegally diverted ferroalloy assets and profits from Ferroalloy Holding.  *See* H. F. Smith Decl. at Ex. 2, ¶¶ 61, 74-77.  In particular, the Corporate Discovery Subjects are alleged to have been parties to Kolomoisky's and Bogolyubov's self-dealing transactions, either by directly or indirectly selling raw materials at above-market prices to entities within Ferroalloy Holding or buying product at below-market prices from entities within Ferroalloy Holding.  *See id.* The Corporate Discovery Subjects have financial and other information relating to the diversion of ferroalloy assets and profits in which Pinchuk has an interest; accordingly, discovery from the Corporate Discovery Subjects is highly relevant to the claims in the London Arbitration.  *See id.* at ¶¶ 74-77.

### B.     Mordechai Korf

Mordechai Korf ("Korf") is the President and Chief Executive Officer of GAA.  Korf is also the Chief Executive Officer of Felman Trading and the Chairman of its Board of Directors.  Korf also has been the Chairman of Felman Production and previously was the head of CCMA.  Thus, Korf has knowledge of the Corporate Discovery Subjects' businesses, who their beneficial owners are, and what their relationships are to Ferroalloy Holding.  He also has knowledge of the business, capitalization, financial condition, and value of the Corporate Discovery Subjects.  Korf also should have knowledge of what other entities, including U.S. entities, have been used by Kolomoisky and/or Bogolyubov to operate their interests in the ferroalloy industry.

Accordingly, Korf has knowledge of financial and other information that is highly relevant to the claims in the London Arbitration.

**RELIEF REQUESTED**

The Applicant seeks the following documents and other information in the possession, custody and control of the Discovery Subjects, including electronically-stored information ("ESI"), as defined in the Federal Rules of Civil Procedure:

**I.      DOCUMENTS**

From each of Georgian American Alloys, Inc., Felman Production LLC, Felman Trading, Inc., and CC Metals & Alloys LLC (each a Corporate Discovery Subject):

(1) The articles of incorporation, by-laws, minutes, board materials, and resolutions of each Corporate Discovery Subject, including any amendments thereto;

(2) An organizational chart or documents sufficient to show the directors and officers of each Corporate Discovery Subject, both at the time of incorporation and presently;

(3) A chart of or documents sufficient to show the corporate parents, subsidiaries, and any affiliates for each Corporate Discovery Subject, both at the time of incorporation and presently;

(4) Documents showing how the Corporate Discovery Subjects were and have been capitalized during the period of January 1, 2006 to the present;

(5) Documents showing the identity of any shareholder, member or beneficial owner of each Corporate Discovery Subject, both at the time of incorporation and presently;

(6) Documents reflecting non-privileged communications by any Corporate Discovery Subject with Kolomoisky or Bogolyubov or any agent of Kolomoisky or Bogolyubov regarding the ferroalloy business;

(7) Documents regarding the ferroalloy business and referring to Ferroalloy Holding, Pinchuk, EastOne Group Ltd., Interpipe, Mikhail Iosifovich

        Spektor ("Spektor"), Mikhail Viktorovich Voevodin ("Voevodin"), or Alexander Mikhaylovich Babakov ("Babakov");[4]

(8) Quarterly and annual financial statements (including Profit and Loss Statements, Balance Sheets, and Statements of Cash Flows) for each Corporate Discovery Subject from January 1, 2006 to the present;

(9) Documents reflecting internal or external valuations, appraisals, liquidation analyses, fairness or solvency opinions, or other documents concerning the value of the assets of any Corporate Discovery Subject;

(10) Accounts Receivable and Sales Revenue Ledgers reflecting all sales by date from January 1, 2006 to the present;

(11) Accounts Payable and Purchase Ledgers reflecting all purchases by date from January 1, 2006 to the present; and

(12) Documents referring to Chemstar Products LLC, Empire Chemical LLC, Demeter Diversified LLC, Ferrost LLC, or Solmex LLC.[5]

Additionally, from Felman Trading:

(1) All trading and distribution records for Georgian American Alloys, Inc., Felman Production LLC, CC Metals & Alloys LLC, Georgian American Alloys, Inc., and any other ferroalloy business directly or indirectly beneficially owned and/or controlled by Kolomoisky and/or Bogolyubov.

Additionally, from Korf individually:

(1) Documents reflecting non-privileged communications by Korf or any agent of Korf with Kolomoisky or Bogolyubov or any agent of Kolomoisky or Bogolyubov regarding the ferroalloy business; and

(2) Documents regarding the ferroalloy business and referring to Ferroalloy Holding, Pinchuk, EastOne Group Ltd., Interpipe, Spektor, Voevodin, or Babakov.

---

[4] As discussed in the Declaration of Henry Forbes Smith, Messrs. Spektor, Voevodin and Babakov are business partners who participate in the Ferroalloy Holding. *See* H. F. Smith Decl. at ¶ 7. Although Spektor is named as a nominal Respondent in the London Arbitration, Pinchuk does not assert breach of contract claims against Spektor in connection with Ferroalloy Holding. *See id.*

[5] All of these entities are U.S. entities believed to be beneficially owned and/or controlled by Kolomoisky or Bogolyubov, affiliated with the Discovery Subjects, and involved in the ferroalloy business. *See* H. F. Smith Decl. at Ex. 2, ¶ 77.

## II. DEPOSITION TESTIMONY

The Applicant also seeks the deposition of Mordechai Korf concerning the following:

(1) the Corporate Discovery Subjects' businesses;

(2) the Corporate Discovery Subjects' beneficial owners;

(3) the Corporate Discovery Subjects' relationships to Ferroalloy Holding;

(4) the Corporate Discovery Subjects' financial condition and value; and

(5) any other entities which have been used by Kolomoisky and/or Bogolyubov to operate their interests in the ferroalloy business.

## MEMORANDUM OF LAW

### I. THE APPLICATION MEETS ALL OF THE STATUTORY REQUIREMENTS OF 28 U.S.C. § 1782

28 U.S.C. § 1782 is designed to allow parties to non-U.S. proceedings to take discovery in the United States for use in those non-U.S. proceedings. It provides in part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court . . . The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

28 U.S.C. § 1782(a). Section 1782 allows a "broad range of discovery" so as to "assist foreign tribunals in obtaining relevant information that the tribunals may find useful." *Intel Corp. v. Advanced Micro Devices, Inc.,* 542 U.S. 241, 259, 262 (2004). Based on the

9

Supreme Court's decision in *Intel*, there are four basic requirements for discovery under § 1782:

(1) the request must be made by a foreign or international tribunal, or by any interested person;

(2) the request must seek evidence, whether it be the testimony or statement of a person or the production of a document or other thing;

(3) the evidence must be for use in a proceeding in a foreign or international tribunal; and

(4) the person from whom discovery is sought must reside or be found in the district of the district court ruling on the application for assistance.

*In re Clerici,* 481 F.3d 1324, 1331-32 (11th Cir. 2007) (internal quotations and citations omitted); *see also Intel*, 542 U.S. at 246-47.  The Application meets all of these statutory requirements.

### A. Pinchuk is an "Interested Person"

Without question, Pinchuk is an "interested person" within the meaning of § 1782.  In *Intel,* the Supreme Court defined an "interested person" under § 1782 to include a litigant in a foreign proceeding.  *Intel,* 542 U.S. at 256.  An interested person is someone who has a role in submitting evidence and has participation rights in the foreign tribunal, and includes someone who has a "reasonable interest in obtaining judicial assistance." *Id.*  Pinchuk is such a person.  He is the claimant in the London Arbitration.  *See* H. F. Smith Decl. at ¶ 5.  By this Application, Pinchuk seeks to gather evidence and testimony for use in connection with the London Arbitration.

### B. The Application Seeks Documentary and Testimonial Evidence

The Application requests documentary and testimonial evidence from the Discovery Subjects, satisfying the § 1782 requirement that the request must seek evidence, whether it be the

testimony or statement of a person, or the production of a document or other thing. *See In re Clerici,* 481 F.3d at 1331-32.

### C. The Discovery Subjects Are Found in this District

Each of the Discovery Subjects is found in this District, conducting business from their headquarters or through their agents in Miami, Florida as follows:

(1) Georgian American Alloys, Inc.
200 S. Biscayne Boulevard
Suite 5500
Miami, Florida 33131

(2) Felman Trading, Inc.
200 S. Biscayne Boulevard
Suite 5500
Miami, Florida 33131

(3) Felman Production LLC
c/o Robert Powell
200 S. Biscayne Boulevard
Suite 5500
Miami, Florida 33131

(4) CC Metals & Alloys LLC
c/o Felman Trading, Inc.
200 S. Biscayne Boulevard
Suite 5500
Miami, Florida 33131

(5) Mordechai Korf
Chief Executive Officer of Georgian American Alloys, Inc., and Felman Trading, Inc.
200 S. Biscayne Boulevard
Suite 5500
Miami, Florida 33131

Accordingly, each Discovery Subject falls within § 1782.

### D.      The Evidence Will Be Used in Proceedings in a Foreign or International Tribunal

#### 1.      *The London Arbitration is a foreign proceeding under § 1782*

The Eleventh Circuit and courts in this District also have recognized that proceedings like the London Arbitration fall within § 1782.  The London Arbitration is a proceeding filed by Pinchuk before the London Court of International Arbitration (the "LCIA").  As detailed below, the LCIA qualifies as a foreign or international tribunal that is covered by § 1782.

Private international arbitral proceedings, such as the London Arbitration, constitute a "proceeding" before a "foreign tribunal" under § 1782.  *See In re Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.,* 685 F.3d 987, 995 (11th Cir. 2012) (holding that a foreign arbitration panel fell within § 1782's scope); *In re Application of Mesa Power Group, LLC,* 878 F. Supp. 2d 1296, 1303 (S.D. Fla. 2012) (holding that a foreign arbitration tribunal functionally qualified as a "foreign or international tribunal" under § 1782); *In re Application of Winning (HK) Shipping Co., Ltd.,* Case No. 09-22659-MC, 2010 WL 1796579, **6-7 (S.D. Fla. Apr. 30, 2010) (holding that a London arbitration tribunal fell within the purview of § 1782).

The Eleventh Circuit adopted the functional approach established by the Supreme Court in *Intel* to determine whether an arbitral tribunal qualifies as a "foreign tribunal."  *Consorcio Ecuatoriano,* 685 F.3d at 995.  An arbitral body functions as a "foreign tribunal" and thus falls within the scope of § 1782 if: (1) it is a first-instance adjudicative decisionmaker; (2) it permits the gathering and submission of evidence; (3) it has authority to determine liability and impose penalties; and (4) its decision is subject to judicial review.  *See id.*

The London Arbitration satisfies these factors. The LCIA is a preeminent arbitral body. The members of the LCIA tribunal have authority to hear disputes, weigh evidence, and issue a decision that is binding on the parties. Moreover, its decisions are subject to judicial review. *See* H. F. Smith Decl. at ¶¶ 27, 28, 31-42. Thus, the London Arbitration qualifies as a "proceeding" before a "foreign tribunal" for purposes of § 1782.

### 2. *The requested discovery is relevant to the London Arbitration*

The LCIA tribunal can benefit from the discovery that this Application seeks. The documents requested about the beneficial ownership and financial value, assets, and/or capitalization of the Corporate Discovery Subjects, *inter alia*, as well as the documents and sworn testimony of Korf on his knowledge of the Corporate Discovery Subjects, Ferroalloy Holding, and Kolomoisky's and/or Bogolyubov's interests in the ferroalloy business, will assist the LCIA tribunal in adjudicating Pinchuk's breach of contract claims. Each Corporate Discovery Subject is involved in some way in the ferroalloy business and is an entity in which Pinchuk should have been offered the opportunity to participate, in accordance with the parties' agreements and understandings. Additionally, the Discovery Subjects have information of other entities beneficially owned and/or controlled by Kolomoisky and/or Bogolyubov and involved in the ferroalloy industry in which Pinchuk should have been offered the opportunity to participate.

### E. Granting the Application Would Foster the Twin Policy Aims of § 1782

Granting the Application would foster § 1782's "twin aims of providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts." *Intel,* 542 U.S. at 252 (internal quotations omitted).[6]

---

[6] These "twin aims" are consistent with the legislative history of § 1782, which "reflects a determination on the part of Congress to broaden the scope of international judicial assistance afforded by the federal (…continued)

13

The first aim would be served because, as set forth above, the proposed discovery is narrowly tailored to seek information that is likely to be highly relevant to the London Arbitration. Thus, granting the Application would be an efficient means of assisting a party before foreign tribunals. *See Lancaster Factoring Co. Ltd. v. Mangone*, 90 F.3d 38, 41 (2d Cir. 1996) (goals of § 1782, which dates back to 1855, are to provide "equitable and efficacious" discovery procedures in U.S. courts 'for the benefit of tribunals and litigants involved in litigation with international aspects") (quoting S. Rep. No. 1580, 88th Cong., 2d Sess. 2 (1964); *John Deere Ltd. v. Sperry Corp.*, 754 F.2d 132, 135 (3d Cir. 1985) (noting that a "liberal intent to provide judicial assistance" has been "acknowledged as a primary statutory goal since § 1782's inception").

The second aim would be served because granting the Application would further the exchange of judicial assistance between the United States and the United Kingdom. *See John Deere*, 754 F.2d at 135 (noting that § 1782 takes into account "considerations of comity and sovereignty that pervade international law" and that reciprocity is not a requirement for its application). Accordingly, the "twin aims" of § 1782 support granting Pinchuk's Application.

As a result, because Pinchuk's Application meets all of the statutory requirements for invoking 28 U.S.C. § 1782, this Court has jurisdiction to grant the Application.

---

courts" and hopefully stimulate reciprocal aid from other countries. *See John Deere Ltd. v. Sperry Corp.*, 754 F.2d 132, 135 (3d Cir. 1985) (discussing the legislative history of § 1782).

## II. THE COURT SHOULD EXERCISE ITS JURISDICTION UNDER SECTION 1782 AND GRANT THE APPLICATION

Once the Court has determined that the statutory requirements for relief under § 1782 have been met, the Court is vested with the discretion to afford that relief. In *Intel,* the Supreme Court identified the four factors to be used in deciding whether § 1782 relief should be granted:

(1) whether "the person from whom discovery is sought is a participant in the foreign proceedings," because "the need for §1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant";

(2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance";

(3) "whether the §1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and

(4) whether the request is otherwise "unduly intrusive or burdensome."

*Intel*, 542 U.S. at 264-65.

Each of these factors supports granting Pinchuk's Application.

### A. The Discovery Subjects Are Not Parties to the Foreign Proceedings

The Discovery Subjects are not parties to the London Arbitration, and are not expected to become parties to that proceeding. Therefore, § 1782 plays a significant role in Pinchuk's ability to obtain discovery from the Discovery Subjects regarding Kolomoisky's and Bogolyubov's concealed assets in which Pinchuk may have a legal interest and the existence of which will demonstrate that Kolomoisky and Bogolyubov breached their agreements and understandings with Pinchuk, as he alleges in the London Arbitration.

### B.      The LCIA Is Not Hostile to this Application

Once the documents and testimony are obtained, there is no reason to believe that the arbitral tribunal in the London Arbitration will reject documents and testimony concerning the beneficial ownership and financial value, assets, and/or capitalization of the Corporate Discovery Subjects, as well as documents and testimony concerning Ferroalloy Holding and Kolomoisky's and/or Bogolyubov's interests in the ferroalloy business.  There is no law, rule of evidence or rule of procedure in the LCIA that prohibits Pinchuk from filing this Application or from seeking and obtaining the discovery requested.  *See* H. F. Smith Decl. at ¶¶ 27-30.  Indeed, English law (which the parties to the London Arbitration agree govern their dispute) does not forbid the parties or the LCIA from seeking the assistance of the U.S. courts in collecting evidence.  *See id.* at ¶ 30.

### C.      The Application Has Not Been Filed to Circumvent Any Law or Rule

On its face, the Application has been interposed for a proper purpose.  The Application is the only practical way that Pinchuk has to obtain highly relevant evidence relating to concealed assets controlled by Kolomoisky and Bogolyubov through the Discovery Subjects.  Absent relief under § 1782, Pinchuk will be deprived of key evidence for use in the London Arbitration, indeed, evidence relating to assets in which he has a legal interest.

### D.      The Discovery Requests Are Not Unduly Intrusive or Burdensome

Finally, Pinchuk's Application is narrowly tailored to the subject matter of the pending London Arbitration.  The information sought is focused, highly relevant and necessary for a fair and just resolution of the underlying matter.

In light of the fact that all four factors weigh in favor of granting the requested discovery, Pinchuk respectfully requests that the Court grant his Application.

**III.    THE DISCOVERY SUBJECTS SHOULD PRESERVE RELEVANT EVIDENCE**

The requested evidence is for use in a proceeding that concerns the improper concealment of assets. Accordingly, Pinchuk submits this Application on an *ex parte* basis and seeks an order directing the Discovery Subjects to preserve the evidence sought. To the extent that the Discovery Subjects seek protection from any of the proposed discovery, they can address those issues in response to the requested discovery or through an appropriate motion. *See, e.g., In re Clerici,* 481 F.3d at 1329 (affirming district court's denial of motion to vacate order granting *ex parte* § 1782 application).

The relevant events took place beginning in 2006 and have continued through to the present, and the Applicant is concerned that some or all of the documentary evidence sought may be lost or jeopardized by the Discovery Subjects' document retention and destruction policies or otherwise. To the extent that any of the requested evidence may be discarded or deleted, manually or automatically, the Discovery Subjects should be directed to preserve all such potentially relevant evidence. *See In re Setraco Nigeria Ltd.,* No. 3:13-mc-16-32MCR, 2013 WL 1704913, at *4 (M.D. Fla. Apr. 19, 2013) (granting application for § 1782 discovery and requiring discovery subject to preserve documents and evidence); *In re Application of Nat'l Broadcasting Co., Inc.,* No. M-77, 1997 WL 33442116, at *1 (S.D.N.Y. Aug. 1, 1997) (same).

## CONCLUSION

WHEREFORE, for the foregoing reasons, Applicant Victor Mikhaylovich Pinchuk respectfully requests that the Court: (i) grant this Application for Discovery Pursuant to 28 U.S.C. § 1782 with respect to documents requested herein, and order the Discovery Subjects to produce said documents within thirty (30) days; (ii) permit the deposition requested herein within the parameters set forth above; (iii) direct each of the Discovery Subjects to duly preserve

all evidence related to the subject matter of this Application; (iv) permit the Applicant to issue additional subpoenas fifteen (15) days after filing of Notice of Intent to Serve Subpoena, to any other party residing or found within the Southern District of Florida likely to have relevant evidence to be used in the London Arbitration; and (v) permit the Applicant to seek further documents and/or testimony from the Discovery Subjects based on documents and information obtained from the Discovery Subjects or from any other party in response to any other subpoena issued in connection with this Application.[7]

Respectfully submitted,

s/ Richard H. Critchlow
Richard H. Critchlow (FL Bar No. 155227)
rcritchlow@knpa.com
Elizabeth B. Honkonen (FL Bar No. 0149403)
ehonkonen@knpa.com
Jalaine Garcia (Fla. Bar No. 0058632)
jgarcia@knpa.com
KENNY NACHWALTER, P.A.
201 South Biscayne Boulevard, Suite 1100
Miami, Florida 33131-4327
Telephone: (305) 373-1000
Facsimile: (305) 372-1861

*Attorneys for Applicant Victor Mikhaylovich Pinchuk*

---

[7] A Proposed Order is attached hereto as Exhibit B.